# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| SARAH MIXON, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) CV415-270 |
| CAROLYN COLVIN,<br>Acting Commissioner of<br>Social Security, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Sarah Mixon seeks judicial review of the Social Security Agency's denial of her application for Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must

affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC,[1] age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

Mixon alleges disability beginning March 19, 2011, and was 51 years old when her SSI claim was denied. Tr. 93-94, 108-15, 172-77. She has a tenth grade education and past relevant work experience as a check casher, waitress, bartender's helper, and bartender. Tr. 45-47, 49. After a hearing, the ALJ issued an unfavorable decision, which plaintiff appealed. Tr. 20-28. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for the purpose of judicial review. Tr. 1-5.

The ALJ found that Mixon's degenerative disc disease of the lumbar and cervical spine, ventral hernia, chronic obstructive pulmonary disease (COPD), and asthma constituted severe impairments but did not meet or medically equal a Listing. Tr. 22-23. Based on the evidence of record, the ALJ found that she retained the RFC for light work, with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, walk, push, and/or pull "at least" six hours out of an eight hour day but only sit, stand, or walk one hour at a time; never climb

ladders, ropes, or scaffolds but occasionally climb ramps and stairs; stoop, crouch, and crawl occasionally; and avoid even moderate exposure to environmental irritants, concentrated exposure to extreme vibrations, and hazardous work environments where a lack of mobility might endanger herself or others. Tr. 24.

He determined that plaintiff could perform the requirements of her past relevant work as a check casher, Dictionary of Occupational Titles (DOT) 211.462-020, semi-skilled, sedentary work with an SVP[2] of 3. Tr. 27-28.[3] The ALJ thus concluded plaintiff was not disabled. Tr. 28.

Mixon disagrees, arguing that the ALJ failed to properly weigh medical evidence when he discounted the opinion of her treating physician, Dr. Frank Bynes; assess her mental RFC; and evaluate the mental demands of her past relevant work as a check casher. Doc. 18.

---

[2] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C. An SVP of 3-4 corresponds to semi-skilled work, under the skill level definitions in 20 CFR 404.1568 and 416.968. Social Security Ruling 00-4p.

[3] The ALJ confirmed that the VE's testimony was consistent with the DOT. Tr. 28; *see* Tr. 71, 73.

A.  **Weighing Medical Evidence**

1.  **Dr. Frank Bynes**

Plaintiff began seeing Dr. Bynes, a community clinic practitioner, in February of 2011. Tr. 397-98. Over the course of two and a half years, he provided routine care for her complaints of neck and back pain, rheumatoid arthritis, COPD, asthma, and attention deficit hyperactive disorder (ADHD). Clinical observations are scant and largely involve notes on plaintiff's reports of severe pain, Tr. 504-05, 669-72, 677-80, 685-86, 689-92, 693-96, 699-700, 709-14, 718-19, tenderness on palpation of the lumbosacral spine, Tr. 512-15, 561-64, 566-67, 669-72, 675-84, 687-90, 699-700, 709-12, 718-19, and one observation of bilateral knee crepitus, Tr. 508-09. Objective imaging demonstrated "mild" degenerative changes in her right hip, Tr. 616 (right hip X-ray), and "minimal" degenerative changes of the lumbar spine, Tr. 530-31 (lumbar MRI revealing disc tears at L4-5 and L5-S1), 532-33 ("unremarkable" cervical MRI revealing multilevel perineural root sleeve cysts[4]), 602-03 (cervical and lumbar CT scans revealed multilevel spondylosis).

Despite these rather mild findings, Dr. Bynes began regularly

---

[4]  Perineural root sleeve cysts, also referred to as sacral nerve root cysts, are dilations of the nerve root sheath.

administering Tramadol injections,[5] *see, e.g.,* Tr. 397-98, 512-15, 563-64, 566-71, Fentanyl[6] patches, and Roxicodone[7] for pain, *see, e.g.,* Tr. 683-90. *See also* 691-92 (prescribing a trial of Norco[8]), to treat Mixon's reports of severe pain.

Dr. Bynes completed four RFC questionnaires for the agency. The first three reports, completed in February, May, and December 2011, are essentially identical. *Compare* Tr. 432-33, 436-37, *with* 553-54. He opined that plaintiff would miss more than four days of work each month due to her severe lower back pain radiating bilaterally down her legs, and would be unable to lift/carry any weight, sit more than 15 minutes at a time up to 6 hours in an 8-hour workday, stand/walk more than 5 minutes at a time up to 2 hours in an 8-hour workday, or walk more than one block without resting. Tr. 432, 436, 553. He also opined that she would need to take 4-5 unscheduled 30-minute breaks and would need to recline or lie

---

[5] Tramadol is a narcotic (opioid) pain medication that is used to treat moderate to severe pain, both acute and chronic.

[6] Fentanyl is a narcotic analgesic used to treat moderate to severe breakthrough pain.

[7] Roxicodone is a narcotic, immediate-release analgesic that is used to treat moderate to severe pain, both acute and chronic. Oxycodone is the more commonly-known and less-expensive generic.

[8] Norco, also known as Vicodin, is a combination of hydrocodone - a narcotic - and acetaminophen used to relieve moderate to severe pain, both acute and chronic.

6

down beyond regularly scheduled breaks during an 8-hour workday. *Id.*

In his fourth RFC questionnaire in May 2013, Dr. Bynes opined to more restrictive limitation, noting that Mixon could only walk half a block at a time, could stand/walk up to 15 minutes at a time, could only sit/stand/walk for 1 hour out of an 8-hour workday, and would need to take a 20-minute unscheduled break every 15 minutes. Tr. 703-04.

Despite finding her degenerative disc disease of the cervical and lumbar spine severe at Step 2, the ALJ did not find that it met or equaled a Listing at Step 3. Tr. 22-23. He summarized Dr. Bynes' longitudinal treatment history, noting plaintiff had "intermittently presented with complaints such as mild generalized weakness, chest pain and back pain" and, with two exceptions, had "received only conservative management." Tr. 24. Despite his generally "unremarkable treatment records," the ALJ noted that Dr. Bynes had submitted medical source statements assessing extreme limitations. Tr. 25. The ALJ accorded his opinion "no weight because neither Dr. Bynes' treatment notes nor the record as a whole supports the extreme degree of functional restriction he assessed." Tr. 25 (noting the assessment was inconsistent with the course of routine, conservative treatment and no referrals to any type of specialized care);

27 (noting "a complete lack of findings in his records to support such a drastic deterioration in her condition" to brace this "wholly unsupported opinion"). Plaintiff insists the ALJ erred by failing to assign Dr. Bynes' opinion controlling weight. Docs. 18 & 20.

"As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.'" *Black v. Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015) (quoting *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016)).

"The opinion of a treating physician, such as Dr. [Bynes], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

8

records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted).

The ALJ did not err in assigning "no weight" to Dr. Bynes' unsupported, dire opinion of plaintiff's functional limitations. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Phillips*, 357 F.3d at 1240-41. Dr. Bynes' treating record is bereft of *any* clinical findings or observations that would endorse his opinion, and the objective medical evidence is absolutely inconsistent with Dr. Bynes' diagnosis of disabling limitations. *See* Tr. 530-31, 532-33, 602-03, 616. *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (treating physician properly discounted where his opinion was contradicted by the objective medical evidence and his own treating notes). Plaintiff does not cite to a single treating note to buttress Dr. Bynes' opinion on her functional limitations, contending instead that "there is no requirement of a word-for-word match between a claimant's allegations and their [doctor's] treatment notes." Doc. 18 at 23 (citing *Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014)). Mixon's argument is meritless, as the ALJ didn't discount Dr. Bynes' opinion because "those exact restrictions were not in the treatment notes." *Id.* Rather, he discounted Dr. Bynes' opinion

9

because *nothing* in the treatment notes even hints at such extreme functional limitations as those he jotted down when completing the RFC questionnaires.

The ALJ also properly discredited Dr. Bynes' opinion because he provided only routine, conservative treatment, *see* Tr. 25, 27. 20 C.F.R. § 416.927(c)(2)(ii); *Newberry v. Comm'r of Soc. Sec.*, 572 Fed. App'x 671, 671-72 (11th Cir. 2014). Even Dr. Bynes' continual prescription of narcotic painkillers, when viewed in the dearth of any supporting objective medical evidence or clinical findings and observations, cannot support anything aside from an inference that his reports and prescriptions were entirely predicated upon plaintiff's own subjective pain reports. Plaintiff does not dispute that the ALJ properly found her less than fully credible, and a physician whose opinion is based upon a discredited claimant's pain reports is also properly discredited. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010).

Additionally, the overall record contradicts Dr. Bynes' opined extreme functional limitations. For example, despite her reports of disabling pain, consultative examiner Dr. Harriet Steniert observed Mixon's normal gait (without the use of assistive devices) and normal

range of motion in all spinal levels and extremities. Tr. 462-68, 598-605. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (where the evidence supports a contrary conclusion, the Commissioner properly discredits the physician's opinion). The ALJ did not err by discounting Dr. Bynes' evidentially unsupported opinion.

### B. RFC Assessment

The ALJ concluded that Mixon retained the RFC to perform light work with significant postural limitations and no mental limitations. Tr. 24. As discussed above, plaintiff's contention that the ALJ erred by not including Dr. Bynes' opined limitations is without merit. But she also argues that the ALJ failed to accommodate all of her mental and physical impairments in the RFC assessment. Docs. 18 & 20. This argument also fails.

The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the *entire* record. 20 C.F.R. § 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). Here, there was *no* evidence in the record of any severe

medically determinable mental impairment, much less that a mental impairment imposed more than *mild* difficulties in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace. Tr. 22-23.[9]

The bulk of the evidence plaintiff presented about her mental impairments was subjective, doc. 18 at 15-16, but she does not challenge the ALJ's finding that her subjective testimony about the intensity, persistence, and limiting effects of her symptoms was "not entirely credible." The scant objective evidence, even if viewed in Mixon's favor, merely establishes at most that these impairments existed. She had *no* objective history of treatment for mental impairments and never sought counseling or hospitalization for her symptoms. She did not objectively show when or how it affected her ability to perform basic work skills.

---

[9] She refers to Dr. Bynes' treating records as supporting functional limitations imposed by these alleged mental impairments, but even Dr. Bynes' properly discredited RFC questionnaire opining to extreme functional limitations *do not* endorse a single functional limitation imposed by any mental impairment. *See* Tr. 530-31, 532-33, 602-03, 616.

Mixon further argues that any failure to pursue mental health treatment must be excused because she could not afford it. Doc. 18 at 14-16. However, she cites nothing in the record to demonstrate that her failure to seek mental health treatment of any sort was due to financial concerns. *See id.* The ALJ's decision was based on the absence of evidence of a severe mental impairment, and her failure to pursue treatment indicates her mental impairments simply were not as severe as alleged -- not because she was unable to afford such treatment.

Substantial evidence thus supported the ALJ's decision that Mixon's ADHD, "mood disorder," and anxiety resulted in only mild restrictions.

As the ALJ observed, Dr. Bynes prescribed medication for diagnoses of attention deficit disorder, a mood disorder, and anxiety but the record is bereft of *any* mental health treatment history or clinically significant findings[10] for these conditions. *Id.* See 20 C.F.R. § 416.929(c)(3)(v); *Hutchinson v. Comm'r of Soc. Sec.*, 408 Fed. App'x 324, 327 (11th Cir. 2011). The agency reviewing consultants all concluded, based on the record, that Mixon's mental health complaints imposed no more than mild functional restrictions. *Id.* Mere diagnoses aside, [11] nothing in the record endorses anything more than mild functional limitations on plaintiff's ability to work. Absent any such evidence, the ALJ did not need to perform the Psychiatric Review Technique evaluation under 20 C.F.R. §§ 416.920a(d) or *sua sponte* create mental functional limitations unsupported by the evidence of record. The ALJ did not err in his mental RFC assessment.

---

[10] *See* Tr. 23, 504-05, 508-09, 561-82, 666-94, 699-700, 709-15, 718-23.

[11] *See Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"); *Davis v. Barnhart*, 153 Fed. App'x 569, 572 (11th Cir. 2005) ("disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself").

Plaintiff also argues that the ALJ failed to accommodate her coccydynia, pain in her tailbone resulting from a coccygeal fracture in early 2011, in his RFC assessment. Again, she relies entirely upon her own testimony to demonstrate that she experiences disabling pain with sitting. Doc. 18 at 18. The ALJ, however, found "no clinical findings in the record to suggest any residual pathology and resulting functional restrictions" imposed by her coccydynia. Tr. 22. Plaintiff emphasizes that Dr. Steinert observed that plaintiff experienced some difficulty sitting in her July 2011 and March 2012 examinations as evidence that the ALJ should have incorporated a greater sitting limitation into the RFC. Docs. 18 at 18 (citing Tr. 468) & 20 at 8 (citing Tr. 604). However, Dr. Steinert's opinion that plaintiff "can sit for 30 minutes," *see* Tr. 604, does not address her ability to sit over the course of an 8-hour day. Notably, in the section reserved for "limitations of [activities of daily living] and work activity," Dr. Steinert omitted *any* concrete limitation on plaintiff's ability to sit during an 8-hour workday. In the absence of any credited medical source opining to a functional restriction on Mixon's ability to sit during an 8-hour workday, the ALJ sufficiently addressed her subjective complaints by concluding that she retained the RFC to sit for 1

hour at a time for up to 6 hours in an 8-hour workday. 20 C.F.R. § 416.945(a)(3). In short, the ALJ did not err in his physical RFC assessment.

B. Past Relevant Work

Lastly, Mixon contends the ALJ erred at Step 4 by finding that she could meet the mental demands of her past relevant work as a check cashier.[12] Docs. 18 at 19-20 & 20 at 9-10. However, as already discussed, the ALJ did not err in his evaluation of plaintiff's mental RFC. Therefore, the ALJ was entitled to rely upon the VE's testimony that someone with Mixon's RFC could perform the requirements of work as a check cashier. Tr. 24. *See* 20 C.F.R. § 416.960(b)(2); *Simpson v. Comm'r of Soc. Sec.*, 423 Fed. App'x 882, 884 (11th Cir. 2011). Contrary to plaintiff's contentions, the ALJ was under no duty to further question her about her ability to perform this work, given that the VE testified she could perform the work. *Id.*

Plaintiff's half-baked contention that her waitressing experience

---

[12] A review of the DOT reveals no entries for "check casher" *or* DOT 211.462-020. The closest entry appears to be "check cashier," found at DOT 211.462-026. This error is harmless to the ultimate disability finding as the ALJ clearly intended to refer to "check cashier." *Compare* Tr. 71 (VE described "check casher" as sedentary, semiskilled work with an SVP of 3) *with* DOT 211.462-026 (describing "check cashier" as unskilled, sedentary work with an SVP of 3).

was the only past work somehow fleshed out in the record, *see* docs. 18 at 19 & 20 at 10, only serves to bolster the ALJ's finding that she is capable of performing the mental demands of work as a check cashier. *See also Zimmer v. Comm'r of Soc. Sec.*, 211 Fed. App'x 819, 821 (11th Cir. 2006) (while work as a check cashier is "not completely similar to [ ] past work as a waiter," skills learned as a waiter are transferable to work as a check cashier because it "require[s] the same or a lesser degree of each skill [she] acquired, utilize[s] the same or similar tools, and use[s] the same or similar products, processes, or services" such as "customer service and handl[ing] money"). The ALJ did not err by finding plaintiff capable of performing her past relevant work as a check casher.

## III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED**, this  28th   day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

16